```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
               Plaintiff,          )
                                   )
     v.                            )     No.  06 CR 540
                                   )
STEPHEN ROGERS,                    )
                                   )
               Defendant.          )
```

## MEMORANDUM ORDER

This case ascribes appalling criminal conduct to defendant Stephen Rogers ("Rogers"), with charges implicating him in sex-related communications with both someone he perceived to be a female minor and with a real female minor.[1]  Regrettably, however, the case has been marred by troublesome conduct on the part of the prosecutors, most recently their institution of an appeal on evidentiary rulings on the eve of trial (both literally and figuratively)--an appeal accompanied by the required certification that it "is not taken for purpose of delay."  For a full understanding of the situation, it is necessary to review the bidding.

Rogers was originally indicted on August 24, 2006 and arraigned on September 1 of that year.  After extensive discovery and motion practice, including challenges to the indictment

---

[1]  This characterization does not of course involve any substantive determination (or even an indication of one) as to the charges, for Rogers remains clothed with the presumption of innocence.

itself, on April 5, 2007 the case was set for trial on September 19, 2007--a firm trial date, selected only after this Court had verified (as it always does) that such was the earliest date on which both sides would be in a position to proceed (and a date to which, of course, this Court adapted its own calendar to accommodate counsel).

Less than three weeks before that firmly scheduled trial date, the government lodged a superseding indictment that added a third count, charging that Rogers had received an image of child pornography on June 14, 2005, well over a year even <u>before</u> the original indictment had been returned. This Court has no way of knowing when the United States Attorney's office learned of the facts underlying that charge--prosecutorial investigations and decisions are properly secret under the law, consistently with separation-of-powers principles--but it does seem unlikely that such knowledge was acquired so late in the day as to require a superseding indictment almost exactly a year after the original one and so close to a long-established trial date.

In all events, Rogers was arraigned on the superseding indictment on September 4, 2007, a year and three days after the original arraignment. This Court immediately vacated the September 17 trial date and set new schedules for L.R. 16.1 disclosures and for any motion practice, also appointing a guardian ad litem for the real-life minor involved in the Count

Three child pornography charge.[2] Then on October 12 this Court set a new firm trial date of February 11, 2008--fully four months later, and once more a date that was agreed to by government counsel and defense counsel as the earliest time that the case could proceed (again meshing with this Court's calendar).

Less than two weeks before that firm trial date, the government chose to return a Second Superseding Indictment, adding as a new Count Four a charge stemming from the identical event that had been charged in the first superseding indictment five months earlier, this time wrapping the facts in a charge under 18 U.S.C. §2251(a)(Count Three had charged the same June 14, 2005 occurrence as giving rise to as an 18 U.S.C. §2252A(a)(2)(A) violation).[3] Because Rogers had an absolute

---

[2] As suggested at the outset, in Counts One and Two a law enforcement officer played the role of a purported minor in an online electronic communication with Rogers.

[3] No conceivable reason appears to explain, let alone to justify, that later-than-last minute tactic that forced postponement of the immediately impending trial that had been set--with everyone's agreement--more than four months earlier. When the prosecutors had decided at that earlier date to criminalize Rogers' June 2005 conduct via the original superseding indictment, that clearly should have been the occasion for them to elect to make that selfsame conduct the target of two criminal charges rather than one, instead of the second added charge later becoming the product of an untimely afterthought that was implemented immediately before the trial that had been rescheduled for February 11, 2008. Indeed, with that June 2005 conduct by Rogers having taken place fully 14 months before the original August 2006 indictment, it is difficult to understand why all four charges were not packaged in that original indictment from the very outset.

3

right under the Speedy Trial Act (18 U.S.C. §3161(c)(2)) to a 30-day gap between the arraignment on that new charge and the time of trial, this Court had no choice other than to vacate the trial date. It did so and reset the trial by agreement of the parties to commence March 3, 2008.

This time, like the once-famed Doomsday Clock promulgated by the Bulletin of Atomic Scientists, further critical developments came even closer to the newest trial date. Apparently as the result of some additional materials recently provided by the government, in the week before trial defense counsel filed a motion to sever Counts Three and Four (which, as already stated, were totally intertwined with each other) from Counts One and Two, which were similarly intertwined with each other but were separated by about a year from the Counts Three and Four event. Defense counsel urged that severance was called for because of a strong possibility that the jury might improperly use evidence of one crime or set of crimes to infer guilt on the other crime or crimes--propensity evidence. Both sides provided input on that subject for this Court's consideration. Meanwhile the government filed on February 27, and this Court promptly ruled upon (in each instance granting), a whole set of motions in limine. By the end of the week on February 29 (1) the voir dire conference preceding trial had been held, (2) each side had prepared and submitted proposed voir dire questions and a list of names of witnesses and

4

possible references to aid in jury selection, (3) the government had tendered its proposed jury instructions and (4) a jury had been ordered to report for the March 3 trial.

After considering the parties' submissions and argument on the motion to sever, this Court granted that motion in an oral ruling (time was too limited to consider issuing a written opinion), ruling that the initial trial would proceed on Counts One and Two alone, with Counts Three and Four held for a subsequent trial. This Court ruled as well on other-acts admissibility, which had just been put into issue by a newly-filed government motion--in that respect this Court based its ruling in terms of the interplay of Fed. R. Evid. ("Rule") 404(b), 413 and 403 (on that score it adhered to the principles it had stated in the oral ruling that had addressed a comparable government motion made fully a month earlier, on January 31).

Although as just stated this Court had ruled on a comparable government motion on January 31, no appeal had been lodged by the government to challenge that earlier evidentiary ruling. Yet, as stated at the outset, it now appears that essentially the same substantive ruling has triggered an appeal that once again forces cancellation of the trial (indeed, the government's notice of appeal expressly identifies the January 31 order as well as the February 29 order as the subject of its appeal).

If this were a civil case, even the generous standards

5

prescribed by Foman v. Davis, 371 U.S. 178, 182 (1962) and Fed. R. Civ. P. 15(a) would have supported a refusal to allow such eve-of-trial changes to the gravamen of a plaintiff's claim. There are valid reasons--rooted, as already said, in sound policy considerations--to treat criminal cases differently.  But even though (as stated at the outset) the government has pronounced that this most recent action on its part has not been taken for purposes of delay, what cannot be gainsaid is that step after step that it has taken in this case (including the current one) has had that effect, preventing the case from coming to the prompt and orderly conclusion that should mark every criminal case--or every case of any kind, for that matter.  It has exercised the privilege of absolute prosecutorial discretion, which is conferred on it for sound policy reasons, in a regrettably irresponsible manner.

This Court equally regrets the need to have engaged in this recital, but the level of irresponsibility that has been described here should not go unremarked.  For the government to exercise its absolute power in such a manner is to forget the wisdom in Lord Acton's famous aphorism.

But having said all this, this Court will not leave open the possibility that if any future rulings it might make in this case were to run counter to the government's position on any issue, that might mistakenly be ascribed to the critical view that has

6

been conveyed here.  To that end this Court invokes the one provision in which Congress has vested it with its own absolute power--28 U.S.C. §294(b)--to withdraw from this case, and it so orders.

Under the rules of this District Court, that calls for a random reassignment of the case to one of this Court's colleagues, who will of course be free to make his or her own independent determination as to the evidentiary and other matters that this Court has decided in its interlocutory orders.  Those rulings by this Court have become, in the colorful common law phrase, brutum fulmen.  Because this Court's successor in this case has free rein to reach his or her own conclusions, that would seem to moot the government's appeal because it addresses a now wholly hypothetical matter, thus calling for an advisory opinion--but that is for others to determine.

_____
Milton I. Shadur
Senior United States District Judge

Date:  March 3, 2008